UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FORMERLY KNOWN AS COUNTRYWIDE HOME LOAN SERVICING, LLP,<br><br>Plaintiff,<br>v.<br><br>THUNDER PROPERTIES, INC., *et al.*,<br><br>Defendants. | Case No. 3:16-cv-00120-MMD-WGC<br><br>ORDER |

## I. SUMMARY

This dispute arises from the foreclosure sale of property to satisfy a homeowners' association lien. Before the Court is Plaintiff Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loan Servicing, LLP's motion for partial summary judgment (the "Motion") on its claim the homeowners' association foreclosure sale at issue here did not extinguish its deed of trust.[1] (ECF No. 72.) Primarily because the Court is persuaded that Plaintiff is entitled to equitable relief—because the homeowners' association sale at issue here was at least slightly unfair and included a low sale price—and as further explained below, the Court will grant the Motion.

## II. BACKGROUND

The following facts are undisputed unless otherwise indicated.

---

[1]The Court has reviewed Defendant Thunder Properties, Inc.'s ("Thunder") response to the Motion, and Plaintiff's reply. (ECF Nos. 75, 78.) Defendant ATC Collections Group, LLC ("ATC") did not file a response to the Motion. Defendant Esplanade at Damonte Ranch Homeowners' Association (the "HOA") is no longer a party to this case. (ECF No. 71.)

### A. Deed of Trust History

Michael James and Cari Palmer ("Borrowers") purchased property located within the HOA at 1905 A Wind Ranch Road #A, Reno, Nevada 89521 (the "Property"), on September 18, 2008. (ECF No. 72 at 2.) To purchase the Property, Borrowers executed a note secured by a first deed of trust ("DOT") in exchange for $220,809.00. (*Id.*) The DOT was assigned to Plaintiff on July 30, 2010. (*Id.*)

### B. HOA Lien, Foreclosure, and Subsequent Sale

Borrower failed to pay HOA assessments, and the HOA recorded a notice of delinquent assessment lien on the Property through its agent, ATC, in May 2010. (*Id.*) In June 2011, ATC recorded a Notice of Default and Election to Sell pursuant to the delinquent assessment lien against the Property on behalf of the HOA. (*Id.*) In July 2011, ATC recorded a Notice of Foreclosure Sale pursuant to the delinquent assessment lien against the Property on behalf of the HOA. (*Id.* at 3.)

ATC held the foreclosure sale on the HOA's behalf on September 7, 2011, either in or in front of the Washoe County Courthouse (the "HOA Sale"). (*Id.* at 3; *see also* ECF No. 72-7 at 37.) The HOA purchased an interest in the Property from itself at the HOA Sale for $2,608.[2] (ECF No. 72 at 3.) There were 15 witnesses present at the HOA Sale, but the HOA was the only bidder. (ECF No. 72-7 at 40.) The Property was worth approximately $155,000 at the time of the HOA Sale. (ECF No. 72-11 at 8.)

The dispute between the parties here centers on the HOA Sale because the HOA was only intending to sell the subpriority piece[3] of its lien on the Property at the HOA Sale. ATC's 30(b)(6) designee testified to this. (ECF No. 72-7 at 18.) So did the HOA's 30(b)(6)

---

[2]$2608 was the opening and only bid. (ECF No. 72-7 at 40.) This amount was calculated to correspond to the subpriority piece of the HOA's lien on the Property. (*Id.* at 40-42.)

[3]"As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece." *SFR Investments Pool 1 v. U.S. Bank*, 334 P.3d 408, 411 (Nev. 2014). "The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust." *Id.* "The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust." *Id.*

designee. (ECF No. 72-8 at 45, 48-50, 65, 359-61.) Further, ATC instructed the auctioneer who actually conducted the HOA Sale to read the following instructions at the beginning of the sale: "You are hereby being notified by the association, the beneficiary, through its foreclosure agent, that the opening bid does not include the super-priority lien amount. That the super-priority lien amount will still be a lien on the property once the sale is completed. You are hereby being notified by the association, the beneficiary through its foreclosure agent, that said lien may affect the property, title to the property or value of the property. The purchaser buys this property with full knowledge and understanding of same." (ECF Nos. 72-7 at 39, 258, 72-8 at 45.) The auctioneer later confirmed by email and signed declaration that the HOA Sale occurred, and she read the Notice of Trustee's Sale at the HOA Sale. (ECF No. 72-7 at 260-61.) Further, while the evidence before the Court does not otherwise definitively establish that the auctioneer actually said the words quoted above at the HOA Sale, ATC's 30(b)(6) designee testified those instructions were sent, and she had no reason to believe these words were not actually said at the HOA Sale. (*Id.* at 38-40.)

Perhaps most relevant of all, the HOA Sale was contemporaneously memorialized in a Trustee's Deed Upon Sale dated September 7, 2011 ("TDUS") that was never recorded. (ECF No. 72-7 at 43-44, 262-65; *see also* ECF No. 72-6.) In pertinent part, the TDUS specified that the HOA purchased from itself at the HOA Sale "that portion of its right, title and interest secured by the non-priority portion of its lien under NRS 116.3116 in and to" the Property. (ECF No. 72-6 at 2.) The TDUS was never recorded because, apparently, it was ATC's practice at the time to send deeds upon sale back to the HOA for recording, but it was not the HOA's normal practice to record its interest. (ECF Nos. 72-7 at 43, 72-8 at 49-50 ("Also, we did not want to record it, in which case the association would begin to get property tax bills.").) ATC sent a copy of the TDUS to the HOA's board, and the office of the Nevada Ombudsman for Common-Interest Communities. (ECF No. 72-7 at 42, 262-63.) The HOA never recorded the TDUS. (ECF No. 72-8 at 47-48.)

3

About two years later, ATC recorded a different trustee's deed upon sale to memorialize the HOA Sale—but this version did not have the "non-priority" language. (ECF No. 72-7 at 44-46; *see also* ECF No. 72-9 at 2.) ATC removed the "non-priority" language at the HOA's direction because Thunder's intermediary in a prospective sale that included the Property told the HOA it would not buy the Property unless that language was removed. (ECF Nos. 72-7 at 44-52, 72-8 at 55-71.)

Once ATC recorded the version of the trustee's deed upon sale that did not contain the "non-priority" language, and otherwise cleaned up the Property's recorded records, Thunder agreed to buy the HOA's interest in the Property. (ECF Nos. 72-7 at 48-55, 72-8 at 69-71.) Thunder bought the HOA's interest in the Property from the HOA via quitclaim deed—for $3,200—on December 12, 2013. (ECF No. 72-10 at 2, 4.) That purchase was without warranty. (*Id.* at 2.)

### C. Procedural History[4]

Plaintiff filed the Complaint on March 1, 2016, asserting the following claims: (1) quiet title/declaratory judgment; (2) breach of NRS 116.3116, *et seq.*; (3) wrongful foreclosure; and (4) injunctive relief. (ECF No. 1 at 6-14.) Plaintiff moved for summary judgment only on its first claim for quiet title/declaratory relief. (ECF No. 72 at 1.) In its Motion, Plaintiff seeks a declaration that the DOT continues to encumber the Property. (*Id.*)

## III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is

---

[4]The Court omits the procedural history irrelevant to the Motion.

"genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

**IV.  DISCUSSION**

Plaintiff's primary argument is that the HOA Sale did not extinguish its DOT because the HOA only foreclosed on the subpriority portion of its lien at the HOA Sale. (ECF No. 72 at 1-2.) In the alternative, Plaintiff appeals to the Court for equitable relief

because the HOA Sale was unfair. (*Id.*) The Court agrees with Plaintiff it is entitled to summary judgment on its quiet title claim on either, alternative, basis—as explained below.

### A. Statute of Limitations

The Court will first address Thunder's unpersuasive argument that Plaintiff's quiet title claim is barred by the applicable statute of limitations. (ECF No. 75 at 8-11.) It is undisputed that Plaintiff filed suit about four and a half years after the HOA Sale. (ECF Nos. 1, 72 at 3, 75 at 8.) This Court has previously held—and holds here—that Plaintiff's quiet title claim accrued at the time of the HOA Sale, and is subject to a five year statute of limitations. *See, e.g.*, *Bank of Am., N.A. v. Desert Canyon Homeowners Ass'n*, Case No. 2:17-cv-00663-MMD-NJK, 2017 WL 4932912, at *2 (D. Nev. Oct. 31, 2017). Thus, Plaintiff's quiet title claim is not time-barred. *See, e.g., id.*

### B. Equitable Relief

Plaintiff argues in relevant part that equitable relief is warranted. (ECF No. 72 at 7-9.) The Nevada Supreme Court has held that "courts retain the power to grant equitable relief from a defective foreclosure sale[.]" *Shadow Wood Homeowners Ass'n v. New York Cmty. Bancorp.*, 366 P.3d 1105, 1110 (Nev. 2016). For instance, a court may set aside a sale where there is inadequacy of price as well as proof of slight evidence of fraud, unfairness, or oppression. *See Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 643, 648 (Nev. 2017) (stating as well that inadequacy of price "should be considered with any alleged irregularities in the sale process to determine whether the sale was affected by fraud, unfairness, or oppression").

Plaintiff more specifically argues that equitable relief is warranted because: (1) the Property's sale price at the HOA Sale was extremely low; (2) the HOA specifically represented it only intended to foreclose on the non-priority portion of its lien at the HOA Sale, and that it did not intend to extinguish the DOT, so any result here extinguishing the

6

1  DOT would be inequitable.[5] (ECF No. 72 at 7-8.) Thunder responds in relevant part that:
2  (1) low price alone does not render the HOA Sale inequitable; and (2) the HOA's intent in
3  the HOA Sale is irrelevant because it could not foreclose upon only the subpriority portion
4  of its lien. (ECF No. 75 at 20-21.) The Court agrees with Plaintiff.

The Court finds that Plaintiff is entitled to its requested equitable relief—a declaration that the DOT continues to encumber the property—because the undisputed evidence supports a finding of: (1) a grossly low sale price as a matter of law; and (2) at least slight evidence of unfairness. *See Shadow Canyon*, 405 P.3d at 648. Plaintiff offered undisputed evidence that the Property was sold for $2,608 at the HOA Sale, which was significantly below the fair market value of the Property at the time. (ECF Nos. 72 at 7, 72-6 at 2.) As support for the latter, Plaintiff provided an appraisal report showing the Property was worth $155,000 at the time of the HOA Sale. (ECF No. 72-11 at 8.) Thunder neither attacked the accuracy of the appraisal report, nor introduced any contrary evidence as to the Property's fair market value at the time of the HOA Sale. (ECF No. 75 at 20.) Thus, the Court concludes the large discrepancy between the price the HOA paid at the HOA Sale and the Property's market value at the time demonstrates the price was grossly inadequate as a matter of law. But this alone is not enough to grant equitable relief.

In addition, the Court is persuaded the circumstances surrounding the HOA Sale support a finding of evidence that the HOA Sale would be unfair were the Court to find it extinguished the DOT. The undisputed evidence—including the testimony of both the HOA and ATC's 30(b)(6) designees, the TDUS, and the instructions provided to the auctioneer who conducted the HOA Sale—shows that the HOA only sold itself the subpriority piece of its lien at the HOA Sale. (ECF Nos. 72-6, 72-7 at 18, 39, 43, 258, 262-65, 293-295, 72-8 at 45, 48-50, 65.) Then, approximately two years later, ATC and the HOA changed the language of the TDUS because Thunder would not purchase the Property if the language

---

[5]The Court declines to address the parties' competing arguments regarding the legal uncertainty at the time of the HOA Sale, as resolution of those arguments is unnecessary to resolve the Motion. (ECF Nos. 72 at 8-9, 75 at 21-22.)

7

1 indicating the HOA only purchased the subpriority portion of its lien from itself was not removed.[6] (ECF Nos. 72-7 at 293-95, 72-8 at 359-61.) Further, the HOA's representative said he never told anybody, Thunder or otherwise, that the Property was free and clear of the DOT. (ECF No. 72-8 at 74-75, 359-61.) Under these circumstances, equity compels a finding that the DOT continues to encumber the Property. To find otherwise would be unfair. *See Bank of New York Mellon v. Elkhorn Cmty. Ass'n*, Case No. 2:16-cv-2571-JCM-CWH, 2018 WL 664783, at *7-8 (D. Nev. Feb. 1, 2018) (voiding homeowners' association sale pursuant to the court's equitable powers under similar circumstances, though this case is currently on appeal); *see also 7912 Limbwood Court Tr. v. Wells Fargo Bank*, N.A., No. 2:13-cv-00506-APG, 2015 WL 5123317, at *4-*5 (D. Nev. Aug. 31, 2015), aff'd, 707 F. App'x 479 (9th Cir. 2017) ("To avoid unfairness to the first deed of trust holder and other bidders and to uphold the parties' intent, equity counsels that the sale is void.").

The Court therefore finds Plaintiff is entitled to equitable relief—a declaration that the DOT continues to encumber the Property.

### C. If the HOA Only Foreclosed on the Subpriority Piece

Thunder also argues the HOA Sale extinguished the DOT because the HOA cannot only foreclose on the subpriority portion of its lien. (ECF No. 75 at 12-13.) While the law is not entirely settled, if the HOA could have foreclosed on the subpriority piece of its lien, the Court would also grant Plaintiff's Motion because here, the HOA only foreclosed on the subpriority piece of its lien on the Property. If the HOA only foreclosed on the subpriority piece of its lien, the DOT continues to encumber the Property. Other courts in this district have held as such. *See Bank of Am., N.A. v. Esplanade at Damonte Ranch Homeowners' Ass'n*, Case No. 3:16-cv-00116-RCJ-VPC, 2017 WL 2259978, at *4 (D.

---

[6]The Court is similarly unpersuaded that Thunder is a bona fide purchaser. The evidence before the Court tends to show that Thunder knew it would be taking title to the Property subject to the DOT, especially if the "non-priority" language remained in the TDUS. (ECF Nos. 72-7 at 282, 283, 293-95, 72-8 at 351, 352.) *See also Bank of Am., N.A. v. Esplanade at Damonte Ranch Homeowners' Ass'n*, Case No. 3:16-cv-00116-RCJ-VPC, 2017 WL 2259978, at *4-*5 (D. Nev. May 23, 2017) (finding that Thunder was not a bona fide purchaser).

Nev. May 23, 2017) (involving the same agent, ATC, the same HOA, and nearly identical circumstances, though currently on appeal); *see also 7912 Limbwood Court Tr.*, 2015 WL 5123317, at *4; *Laurent v. JP Morgan Chase, N.A.*, Case No. 2:14-cv-00080-APG-VCF, 2016 WL 1270992, at *7 (D. Nev. Mar. 31, 2016) ("if Palisades can split its lien and enforce the sub- and super-priority liens separately, then Palisades foreclosed on its sub-priority lien."). But the Nevada Supreme Court has suggested, not definitely stated, that a homeowners' association can foreclose only on the subpriority piece of its lien. *See River Glider Ave. Tr. v. Wells Fargo Bank, N.A.*, 385 P.3d 50 (Table), 2016 WL 6072421, at *1 (Nev. 2016); *see also U.S. Bank Nat'l Ass'n as Tr. for Certificate Holders of Structured Asset Mortg. Investments Inc. v. Bourne Valley Court Tr.*, 433 P.3d 263 (Table), 2019 WL 292980, at *1 (Nev. 2019). Therefore, the Court provides this rationale as an alternative basis for its decision.

The TDUS, while unrecorded, clearly specified that the HOA purchased from itself at the HOA Sale "that portion of its right, title and interest secured by the non-priority portion of its lien under NRS 116.3116 in and to" the Property. (ECF No. 72-6 at 2.) Thus, if it could have, the HOA only foreclosed on—and sold itself—the subpriority portion of its lien at the HOA Sale, despite the later-recorded deed that did not contain the same language. *See 7912 Limbwood Court Tr.*, 2015 WL 5123317, at *3 ("There is no genuine issue of material fact that the 2012 deed accurately reflects the parties' intended transaction."). The testimony from ATC and the HOA's representatives, along with the instructions provided to the auctioneer who conducted the HOA Sale, further buttress this conclusion. (ECF Nos. 72-7 at 18, 39, 43-44, 258, 262-65, 293-295, 72-8 at 45, 48-50, 65.) As such, the DOT continues to encumber the Property—whether because the Court exercises its equitable powers to make it so, or more simply because the HOA foreclosed only on the subpriority portion of its lien via the HOA Sale. *See generally 7912 Limbwood Court Tr.*, 2015 WL 5123317 (taking a similar alternative approach).

In its Complaint, Plaintiff requests a declaration that the DOT continues to encumber the Property. (ECF No. 1 at 6, 14.) The other relief requested (except for injunctive relief) is requested in the alternative. Given that Plaintiff has received the relief it requested, the Court dismisses Plaintiff's remaining claims as moot. *See, e.g.*, *Bank of Am., N.A. v. Regency Vill. Owner's Ass'n, Inc.*, Case No. 2:16-cv-00496-GMN-CWH, 2017 WL 3567520, at *3 (D. Nev. Aug. 17, 2017), *appeal dismissed sub nom. Bank of Am., N.A. v. Martinez-Avilez*, Case No. 17-16893, 2018 WL 1401865 (9th Cir. Mar. 2, 2018) (taking this approach under similar circumstances).

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Plaintiff's motion for summary judgment (ECF No. 72) is granted. The Court declares that Plaintiff's DOT continues to encumber the Property.

It is further ordered that Plaintiff's remaining claims are dismissed as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 28th day of Feburary 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE